NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ALLEN OVERFIELD, *Petitioner/Appellee,*

*v.*

MARIAM SUNGULYAN, *Respondent/Appellant.*

No. 1 CA-CV 23-0781 FC

FILED 07-18-2024

Appeal from the Superior Court in Maricopa County
No. FC2023-004482
The Honorable Joanna Reihing, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Allen Overfield, Protected Address
*Petitioner/Appellee*

Best Law Firm, Scottsdale
By Maricella Heyn
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**C A T T A N I**, Judge:

¶1　　　　Mariam Sungulyan appeals the superior court's order affirming a protective order entered against her in favor of Allen Overfield, with whom she has a child in common. Sungulyan asks that we reverse and vacate the court's order. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　In August 2023, Overfield petitioned the superior court for a protective order against Sungulyan because he was worried for his safety after enduring "threats of violence and constant harassment." In his petition, Overfield cited three incidents in which Sungulyan (1) "went onto Facebook asking people to shoot [him]"; (2) stated that if Overfield "came to the Arizona court house she would take everything to the next levels and that [his] whole family [would] pay the price"; and (3) while on the phone with Overfield, screamed "If I have to get you killed I Will[.] Leave me the fuck Alone[.] I'm busy." The same day, the court issued an ex parte protective order prohibiting Sungulyan from contacting Overfield and from possessing, receiving, or purchasing firearms under A.R.S. § 13-3602(G)(4).

¶3　　　　Sungulyan requested a hearing to contest the protective order. At the hearing, the court admitted into evidence four exhibits—including an audio recording, text messages, and screenshots—and heard testimony from Overfield, Mayra Hernandez (Overfield's witness), and Sungulyan. The court then affirmed the protective order "[b]ased on the information and testimony presented," finding by "a preponderance of the evidence that there is reasonable cause to believe that [Sungulyan] has committed an act of domestic violence within the last year."

¶4　　　　Sungulyan filed a motion for reconsideration, asserting (1) the superior court erred when affirming the protective order "solely based on Plaintiff's Exhibit 7," an audio recording that Sungulyan argued should not

have been admitted into evidence, and (2) that Overfield's and Hernandez's testimony lacked credibility. The court denied the motion.

¶5　　　Sungulyan timely appealed. We have jurisdiction under A.R.S. § 12-120.21(A)(1) and Rule 42(a)(2) of the Arizona Rules of Protective Order Procedure.

**DISCUSSION**

**I.　　Sufficiency of the Evidence.**

¶6　　　We review the superior court's decision to affirm a protective order for abuse of discretion. *Michaelson v. Garr*, 234 Ariz. 542, 544, ¶ 5 (App. 2014). A superior court abuses its discretion when it makes "an error of law in reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the [superior] court's decision, is devoid of competent evidence to support the decision." *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 10 (App. 2014) (citation omitted).

¶7　　　For a contested protective order to remain in effect, the plaintiff must prove, by a preponderance of the evidence, that "[t]he defendant may commit an act of domestic violence" or "has committed an act of domestic violence within the past year." Ariz. R. Prot. Ord. P. 38(g)(3); A.R.S. § 13-3602(E). We do not reweigh the evidence, and we presume the superior court considered all evidence before it. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009); *Fuentes v. Fuentes*, 209 Ariz. 51, 55–56, ¶ 18 (App. 2004).

¶8　　　Sungulyan contends the court erred by affirming the order, asserting that it was based solely on a recording of a phone call (Exhibit 7) in which Sungulyan said to Overfield, "I swear to fucking God, I'll get your ass fucking killed, leave me alone, I'm busy." But the record shows the court considered all of the evidence before it. The court based its order "on the information and testimony presented" at the hearing, which included testimony from three witnesses and three other exhibits in addition to Exhibit 7.

¶9　　　Overfield testified that he "constantly [had] threats on [his] life," including that on August 2, 2023, Sungulyan told him she was "hoping that the cops would shoot [him]" during a SWAT raid of his home. Additionally, Hernandez testified that she had "heard conversations that were negative and life threatening [to Overfield] over the phone calls" and that Overfield has "been worried about [his] safety." This evidence provided an adequate basis for the superior court's finding "by a

preponderance of the evidence that the allegations in [the] petition occurred and an act of domestic violence happened."

## II.    Evidentiary Issues.

**¶10**        Sungulyan contends the court erred by admitting Exhibit 7 and by concluding that Overfield and Hernandez were credible witnesses. In a contested hearing regarding a protective order, the court "may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, undue delay, wasting time, needlessly presenting cumulative evidence, or lack of reliability."  Ariz. R. Prot. Ord. P. 36(a).

**¶11**        "A [superior] court has broad discretion in admitting or excluding evidence, and we will not disturb its decision absent a clear abuse of its discretion and resulting prejudice."  *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82–83, ¶ 19 (App. 2005); Ariz. R. Prot. Ord. P. 36(a) cmt. (superior court has broad discretion in "determining whether proffered evidence is admissible in any individual protective order hearing"). "Generally, an abuse of discretion is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."  *Lashonda M.*, 210 Ariz. at 83, ¶ 19 (citation omitted).  Further, we defer to the "court's superior position to weigh the evidence, make credibility determinations, and resolve conflicts in facts."  *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 482, ¶ 42 (App. 2015).

### A.    Exhibit 7.

**¶12**        Sungulyan argues the court erred by admitting the audio recording of her threatening statements.  First, Sungulyan contends the exhibit was outside the time frame relevant to the petition and was unreliable (and thus unfairly prejudicial) because of uncertainty regarding the date of the audio recording.  But, although Sungulyan testified the recording was from "2015 possibly," Overfield testified to the contrary that the recording was from June 24, 2023.  Hernandez likewise confirmed that she was "there to hear [the phone conversation]" on that same date.

**¶13**        The court noted the dispute over the date of the recording but implicitly credited Overfield's and Hernandez's account over Sungulyan's by finding that the allegation of domestic violence had been proven by a preponderance of the evidence.  Because the superior court is best situated to weigh the evidence and make credibility determinations, we defer to its resolution of this factual dispute.

4

¶14 Sungulyan also asserts that she could not hear the audio recording and, therefore, could not dispute its contents. But Overfield stated verbatim the contents of the audio recording before playing it at the hearing. Sungulyan only testified that she "personally couldn't hear [the recording] while [the others] were hearing it," not that she did not hear Overfield testify as to its contents. Thus, her argument is unavailing.

¶15 Finally, Sungulyan contends the court erred by admitting Exhibit 7 because Overfield failed to provide metadata for the recording—which would have shown the date it was made—after the court instructed him to do so. That argument fails, however, given the superior court's broad discretion and the parties' testimony regarding the date of the recorded phone call. Notwithstanding the absence of metadata, the court did not abuse its discretion by admitting Exhibit 7.

### B.    Witness Credibility.

¶16 Sungulyan asserts that the court erred by determining that Overfield and Hernandez were credible witnesses because—she claims—their testimony was directly contradicted by previous statements. But the court was not obligated to wholly discount the witness testimony based on prior inconsistent statements. And here, the court reasoned that both parties were "equally credible," but "additional witness testimony" from Hernandez put the court "over 51 percent" to "more probable than not" as necessary to find that Overfield had proven his allegation of domestic violence by a preponderance of the evidence. Sungulyan has not established error in the superior court's assessment of witness credibility. *See Great W. Bank*, 238 Ariz. at 482, ¶ 42.

### III.    Attorney's Fees.

¶17 Lastly, Sungulyan requests her attorney's fees and costs incurred in this matter under Rule 39 of the Arizona Rules of Protective Order Procedure, arguing that Overfield made false claims, submitted unreliable evidence, perjured himself, and allowed Hernandez to perjure herself. Assuming this rule provides a substantive basis for an award of fees on appeal, Sungulyan's position on appeal was not meritorious, *see* Ariz. R. Prot. Ord. P. 39(b)(1), and we decline her request.

## CONCLUSION

¶18          We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV